ISABELLE E. BOYD, Respondent, v. ROBERT H. BOYD, Defendant. BLANCHARD P. ATKINSON, Intervenor, Appellant.

First Department, June 18, 1929.

*Frank C. Laughlin* of counsel [*Joseph W. Kirkpatrick* with him on the brief; *Wiel, Coursen & Manges*, attorneys], for the appellant.

*Charles B. McLaughlin* of counsel [*Harry N. Selvage*, attorney], for the respondent.

McAvoy, J.   The judgment here annulled a marriage contracted by plaintiff and defendant Boyd, which according to the certificate of marriage occurred on February 8, 1881, although the plaintiff testified that she believed that the marriage was celebrated on that day in 1887.   The date of the celebration of the marriage, however, does not affect the issues here.   The marriage was adjudged void from its inception, because the defendant Boyd, it was found, had a wife living by a former marriage, which had not been dissolved but was in force at the time plaintiff married defendant Boyd.

The appellant here is an intervenor who had married the plaintiff in a Lutheran church in Brooklyn, N. Y., on June 24, 1901. Plaintiff married the appellant then, believing or having heard a rumor that Boyd, from whom she had not heard for seven years, was dead; and she was advised by counsel whom she consulted that she was free to remarry.

Plaintiff and appellant lived together for twenty-two years and separated March 25, 1923.   Plaintiff then began an action for separation against the intervenor, appellant, and he, in that suit, set up the defense that his marriage to her was invalid because of her previous marriage to Boyd, who was then living and whose marriage to her was still in full effect.   The intervenor moved for a judgment on the pleadings in this separation action, but this motion was denied, and the order denying it was affirmed on appeal. (*Atkinson* v. *Atkinson*, 121 Misc. 659; 207 App. Div. 660.)

Appellant then brought an annulment action in Kings county, stayed the trial of the separation action, and recovered a judgment in the Kings county suit.   There the defendant Boyd was called by appellant to prove his marriage to the plaintiff here, and that there had been no divorce or annulment.   While giving his testimony, he gave no evidence and volunteered no information to the appellant, intervenor's counsel with respect to there being a former

marriage, and admitted that when he was married to the plaintiff he stated to the minister, in writing, that he was unmarried.

This judgment of annulment in Kings county was affirmed on appeal, without opinion, by the Appellate Division. (*Atkinson* v. *Atkinson*, 213 App. Div. 827.)

While the appeal was pending, this plaintiff made a motion for a new trial based on a former common-law marriage between Boyd and one Annie Bernes. There she presented an affidavit of Boyd's with respect to the common-law marriage, and, also, an affidavit of one Jane Morgan who set forth her knowledge with respect to the common-law marriage to Annie Bernes. This motion for a new trial was denied, and on appeal, which was heard with her appeal from the judgment of annulment, the judgment and the order were affirmed. Leave to appeal to the Court of Appeals was denied both in the Appellate Division (213 App. Div. 879) and in the Court of Appeals.

This action was then brought in Bronx county to have her marriage to Boyd annulled, and she had judgment entered by default, and on that judgment moved in Kings county to vacate the annulment judgment there. That motion was denied. On appeal to the Appellate Division there, that order denying her motion was reversed and she was granted a new trial. (*Atkinson* v. *Atkinson*, 217 App. Div. 96.) On appeal to the Court of Appeals by this appellant the appeal was dismissed. (244 N. Y. 584.) The final decree in the annulment action was entered March 17, 1925. On a direct appeal to the Court of Appeals that appeal was dismissed, because leave of the Appellate Division had not been obtained. (241 N. Y. 543.)

The Kings county annulment action has not yet been retried. The appellant, intervenor, Atkinson, had a default decree against him in the Bronx county action, which would have been conclusive on the new trial, so he moved to vacate the judgment and for a new trial and for permission to intervene as a defendant, and this motion was granted by order of May 16, 1927. On this retrial the present interlocutory judgment was entered in the Bronx county action on March 16, 1929, the intervenor being made a party and contesting the suit.

Boyd, who had testified in the Kings county action that he had married the plaintiff in Jersey City on February 8, 1881, and lived with her thereafter, and that the marriage was never dissolved, was a witness for the plaintiff in this action. He stated that in 1878, when he was twenty-four years of age, he met Annie Bernes at a pleasure resort known as Elysian Fields, Hoboken, N. J., and thereafter began meretricious relations with her, and maintained

her at her own place of residence thereafter. She was, at the time he met her, about nineteen years of age and he lived with her about a year and a half. He said that when they started living in her place at Little Jones street she mentioned the subject of marriage and asked him why he did not, or would not, make an agreement to be married, and he told her to go ahead and " draw up a line." She got a paper and drew an agreement, which they signed and which he presumes was destroyed after they separated. The contents of the agreement, however, are not related by him, but he stated that he gave her a wedding ring with the initials " R H to A " to bind the " bargain," and told her that it would not be a full-fledged marriage unless she had a ring. He said that they lived as man and wife, and that Annie went by the name of Mrs. Boyd, and that he introduced her as his wife. But it does not appear to whom these introductions were made. He testified that when he married the plaintiff here Annie Bernes was still living, and that their common-law marriage was never annulled. He said that they had lived together for six months before they entered into the alleged agreement; that then they continued to live together for a year and a half, when they had a quarrel because she had not been in for several nights. He told her: " I am going home," and she said: " Oh! " Three months later he met her at the Elysian Fields, where he spent each Sunday. They started living together again in Jersey City, where they continued to live for three years. He said that, in all, he lived with her for about five years, although in 1925 he testified that he lived with her but one year, and at this trial said that he separated from her around 1881.

Jane Morgan's principal corroboratory proof contained the testimony that Annie Bernes called at her home in June, 1894, to see Boyd, and submitted proof as to her alleged marriage, consisting of a so-called certificate of marriage and the wedding ring, and that Annie stated that she was going to make Boyd support her, or have him arrested if he would not. Jane Morgan says that she heard Annie Bernes tell him that she had come to tell the plaintiff here that she was not Boyd's wife, but that Annie herself was married to him, and that if he did not support her, she would have him arrested for bigamy. Jane Morgan did not hear the reply of defendant Boyd to this statement of Annie's. Although Annie threatened then to come back to see Boyd, she never did so.

Jane Morgan repeated verbatim the contents of this marriage certificate, although it was shown to her on but one occasion. It read: " This is to certify that Robert H. Boyd and Annie Bernes take each other for man and wife, to live together until death do us part." She says that there were signatures on the paper, but she

did not identify them. The date of this visit of Annie Bernes to Jane Morgan was in June, 1894, nearly thirty-four years before her testimony was given, in which she recited the certificate's contents from memory.

The rest of the corroboratory proof with respect to calling Annie Bernes by the name of " Mrs. Boyd," and defendant Boyd's reference to Annie as his wife, and their residing together at places where they were known as Mr. and Mrs. Boyd, are the usual concomitants of this class of action and have no real probative force in respect of the establishment of a common-law marriage. The fact that a couple are known as man and wife in a neighborhood may be merely to establish the pretended status of a wife, while the actual position is that of a mistress. Since this cohabitation began in illicit intercourse, a presumption arises strongly against the claimed marriage, which can only be overcome by most convincing evidence of a change in the character of the cohabitation.

The only evidence presented which would be at all competent to show a common-law marriage is the testimony of Boyd, and such testimony seems to me to be highly improbable. It is quite incredible that he and Annie lived together for six months without either incurring any obligation to the other, and that they then signed " a line," having agreed to become man and wife, and then continued to live together as before, each carrying on the occupation in which he or she was engaged before the meeting at Elysian Fields. Since the uncontradicted evidence is that the inception of these relations was meretricious, and there was a subsequent ceremonial marriage between Boyd and plaintiff wholly disregarding this alleged common-law marriage, the evidence fails to furnish a basis for acceptance by the court of the truth of Boyd's testimony given after the death of Annie Bernes, when there was no one to contradict him. For ten years Annie Bernes made no claim or demand on Boyd after his marriage to the plaintiff, and then her claim resembled more that of the abandoned mistress than that of the deserted wife.

The declaration to the minister at the time that Boyd married this plaintiff was a most positive assertion that he was then an unmarried person, and gives added force to the legal presumption in favor of the ceremonial marriage. Taken together with the suspicion with which courts look upon the validity of a common-law marriage, especially when it is sought to be established by the testimony of one of the parties after the death of the other and when one of the parties to the alleged common-law marriage has contracted subsequently a ceremonial marriage, we cannot but conclude that these circumstances do not exclude the inference

or presumption that the first relation of concubinage continued and that there is no satisfactory proof that it changed into actual marriage by mutual consent. Whatever *prima facie* case was made by the evidence of Boyd and the declaration attested to by Jane Morgan, is fairly overcome.

We think that on the facts the judgment for the plaintiff should be reversed and a judgment directed for the defendant, intervenor, dismissing the complaint on the merits.

MERRELL and PROSKAUER, JJ., concur; FINCH, J., and DOWLING, P. J., dissent.

FINCH, J. (dissenting). The judgment appealed from should be affirmed. Whether there was a common-law marriage between Robert H. Boyd and Annie Bernes presented an issue of fact with the evidence preponderating in favor of the finding of the learned trial justice. The husband himself testified that he was married and lived with the woman for some time; that this was pursuant to a written agreement and that he had given her a wedding ring, and had introduced her to his friends as his wife. In this he was corroborated by Mrs. Morgan, whose truthfulness particularly impressed the trial court. She testified that the plaintiff and defendant resided in her house and that in 1894 Annie Bernes came there and claimed to be the wife of the defendant. In corroboration of this claim Annie Bernes exhibited to Mrs. Morgan a wedding ring bearing the initials " R H to A," and a writing signed by the defendant and herself, reading: " This is to certify that Robert H. Boyd and Annie Bernes take each other for man and wife to live together until death do us part." The defendant also was corrobo · rated by one Palmer of whose father the defendant was an employee. This witness testified that upon visiting the defendant he found him and Annie Bernes living together as man and wife, and the latter was introduced by the defendant as his wife. Both Mrs. Morgan and Mr. Palmer appear to be absolutely disinterested witnesses.

The defendant, intervenor, on his part offered the testimony of his attorney to the effect that he had asked the defendant why he gave Annie Bernes a wedding ring, and the latter replied " it was because he did not want his family to know he was living with that woman without being married to her." This attempted explanation serves to establish by concession of the appellant the gift of the wedding ring, the fact of cohabitation as man and wife and a representation by the defendant to his parents that he was married to Annie Bernes. We thus have all the factual elements of a common-law marriage fully established by the evidence. The additional evidence introduced by the intervenor, that the defendant also informed the intervenor's attorney that he never considered

Annie Bernes his wife, although he held her out as such and gave her a wedding ring, does not help the appellant, as the established facts are controlling, and not any secret intention or understanding of the defendant.

It is, of course, possible to say that the plaintiff's evidence is not credited. It is not inherently incredible, however, and credibility is peculiarly for the trial court.

I dissent and vote to affirm the finding of the trial court.

DOWLING, P. J., concurs.

Judgment reversed and judgment directed for the defendant, intervenor, dismissing the complaint on the merits. Settle order on notice.